**The PEOPLE of the State of Colorado, Complainant,**

v.

**Robert E. WOODFORD, Respondent.**

**Nos. 02PDJ107, 03PDJ036.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

July 12, 2004.

The Presiding Disciplinary Judge, WILLIAM R. LUCERO, and Hearing Board Members BARBARA WEIL LAFF, and ROBERT M. MAES, both members of the Bar, issue the following findings of fact and decision.

### DECISION RE: SANCTIONS PURSUANT TO C.R.C.P. 251.15(b)

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

## I. PROCEDURAL BACKGROUND

On December 23, 2002, the People filed a complaint in Case No. 02PDJ107. The citation and complaint were served upon Robert E. Woodford ("Respondent/Woodford") by certified mail at Woodford's registered business and home addresses, in accordance with C.R.C.P. 251.32(b). The People filed proof of service of the citation and complaint on January 14, 2003. The envelopes sent to Woodford at his registered business and home addresses were returned as "unclaimed."

Woodford did not file an answer to the complaint or any other responsive pleading.

On January 27, 2003, the People filed a motion for default on the original complaint. Woodford did not respond. On March 10, 2003, the Presiding Disciplinary Judge ("PDJ") entered an order of default on the complaint in Case No. 02PDJ107. The effect of the entry of default is that all factual allegations and rule violations set forth in the Complaint are deemed admitted and established by clear and convincing evidence. C.R.C.P. 251.15(b); *People v. Richards*, 748 P.2d 341 (Colo.1987)

On April 3, 2003, the People filed an amended complaint in Case No. 02PDJ107, and served the amended complaint on Woodford at his registered business and home addresses. As in the amended complaint, the Respondent failed to answer.

On May 29, 2003, the People filed a complaint in *People v. Woodford,* Case No. 03PDJ036. The citation and complaint were sent to Woodford via certified mail at his last known business and home addresses. On June 26, 2003, the People filed proof of service of the citation and complaint.

On June 9, 2003, the People filed a motion to consolidate Case No. 03PDJ036 with Case No. 02PDJ107. On June 30, 2003, the PDJ granted the motion to consolidate. Thereafter, all pleadings filed in this matter were filed under Case No. 02PDJ107 (Consolidated with 03PDJ036).

On July 1, 2003, the People filed a second motion for default, encompassing all claims asserted in the consolidated matters. On November 5, 2003, the PDJ entered an order of default on the amended complaint in 02PDJ107, and the complaint in 03PDJ036. All factual allegations set forth in said complaints were deemed admitted and all rule violations alleged were deemed proven pursuant to C.R.C.P. 251.15(b) and are therefore established by clear and convincing evidence. *See People v. Richards*, 748 P.2d 341 (Colo. 1987). The amended complaint in 02PDJ107 is attached as Exhibit A. The complaint in 03PDJ036 is attached as Exhibit B.

A Sanctions Hearing pursuant to C.R.C.P. 251.15(b) was held on June 29, 2004, before

the Hearing Board. Gregory G. Sapakoff, Assistant Regulation Counsel, represented the People of the State of Colorado ("People" or "Complainant"). Robert E. Woodford, did not appear either in person or by counsel.

## II. SUMMARY OF FINDINGS AND CONCLUSIONS

The Hearing Board considered the People's argument; the facts established by the entry of default, the exhibits admitted, the investigation report, the Respondent's prior disciplinary record, and the statement of a complaining witness, Mr. Skoglund. Based upon the forgoing, the Hearing Board made the following findings of fact and conclusions of law.

Woodford has taken and subscribed the oath of admission, was admitted to the Bar of the Colorado Supreme Court on January 9, 1987, and is registered upon the official records of the Colorado Supreme Court, registration number 16379. Woodford is, therefore, subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

The facts, established by the entry of default, prove that Respondent engaged in a pattern of misconduct involving eleven clients over a period of two years. The gravamen of the charges against Respondent include abandonment of clients and conversion of client funds. The amended complaint of November 5, 2003, sets forth numerous rule violations including the following:

- In several client matters, Respondent treated as his own thousands of dollars he received from clients for work he agreed to perform but never did. This conduct constitutes knowing conversion of client funds in violation of Colo. RPC 8.4(c) (knowing conversion of client funds); *People v. Townshend*, 933 P.[2d] 23 1327 (Colo.1997). Respondent also failed to keep client funds separate from his own property, in violation of Colo. RPC 1.15(a), deposit unearned fees into a trust account, in violation of Colo. RPC 1.15(f)(1), and return client funds he did not earn, in violation of Colo. RPC 1.15(b).

- On numerous occasions, Respondent neglected and ultimately abandoned client's legal matters entrusted to him though clients endeavored repeatedly to communicate with Respondent. Examples include failure to apply for a permit to operate a gravel pit business and, for the same client, to prepare a living trust. This client, Mr. Skoglund, advised the hearing panel that he had to travel from the San Luis Valley to Colorado Springs in an effort to "catch" the Respondent in his office so that he could find out what was happening on his case. In other cases the Respondent failed to timely file pleadings in three separate bankruptcy matters, and failed to file a dissolution of marriage petition after clients paid him to do so. Any one of these cases, involving nearly a dozen clients, standing alone may not be particularly egregious if looked at individually. Taken together, however, they demonstrate a pattern that goes far beyond simple neglect. As a result of Respondent's conduct, clients suffered serious harm. This conduct constituted multiple violations of Colo. RPC 1.3 (neglect of client matters).

- In several incidents Respondent was involved in conduct that was dishonest or untrustworthy in violation of Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) by misrepresenting to clients the status of their cases and making false statements in court proceedings. Respondent also violated Colo. RPC 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects) by requesting a notary to notarize an unsigned signature dated the previous year. Respondent also violated Colo. RPC 8.4(h) (other conduct that adversely reflects on a lawyer's fitness to practice law) by failing to pay the woman who worked for him money he owed her after he terminated her services.

(*See* the attached Complaint and Amended Complaint for more detailed information on the range of charges against Respondent and the facts supporting them.)

### III. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 and Supp. 1992) ("ABA *Standards*") are the guiding authority for determining sanctions to be imposed for disciplinary violations in Colorado. Pursuant to ABA *Standards* § 3.0, the Court considers the following factors in imposing sanctions:

(a) Duty violated;

(b) Lawyer's mental state;

(c) Actual or potential injury caused by the lawyer's misconduct; and

(d) Aggravating or mitigating factors.

Woodford's multiple violations of the duties he owed to his clients and the legal profession are addressed above. Those duties include his duty to competently represent them and deal with them honestly. With respect to Woodford's mental state, the facts established by the entry of default prove Woodford acted knowingly in neglecting client matters and failing to communicate with clients over an extended period of time. *See People v. Silvola*, 915 P.2d 1281 (Colo.1996)(attorney misconduct that occurs over an extended period of time must be deemed to be willful). ABA *Standards* § 4.4(c). Woodford also acted knowingly in his failure to deal appropriately with client funds, including knowing misappropriation or conversion of client funds and in his acts of criminal or dishonest conduct. ABA *Standards* § 4.11.

Woodford caused serious harm and potential harm to his clients. Woodford's knowing misappropriation or conversion of client funds caused significant financial harm to several of Woodford's clients. In the cases in which Woodford failed to provide competent representation or neglected legal matters, the facts established by the entry of default support a finding that Woodford caused serious harm.

Mr. Kenneth Skoglund, one of Respondent's former clients, appeared at the sanctions hearing and offered a statement. Mr. Skoglund gave Respondent a total of $7000 as a retainer to represent him in a dispute with county commissioners over his business application to operate a gravel pit. Mr. Skoglund also hired Respondent to prepare a draft trust document. Respondent did not follow through on any of these matters, did not respond to request for information, and more than a year later abandoned Mr. Skoglund's case without returning his files or his retainer. This unprofessional treatment of his client, Mr. Skoglund, is representative of the treatment Respondent afforded other clients listed in the complaint.

Woodford did not appear at the hearing and, therefore, there is no evidence of mitigation. In aggravation, the facts detailed in the amended complaint demonstrate the following aggravating factors:

- Woodford has a prior disciplinary record. ABA *Standards* § 9.22(a).

 Woodford's prior disciplinary record consists of:

 - Letter of admonition dated March 9, 1993 for violation of DR5–105(A)

 - Private censure of August 4, 1997 for violation of C.RC.P. 1.15(b) and 1.6(d).

 - Suspension for fifteen months on October 29, 2003 for violation of C.R.C.P 8.4(c), conversion of client funds, among other violations, including C.R.C.P. 1.1, failure to provide competent representation, C.R.C.P. 1.2(a), failure to abide by the client's objectives regarding the representation offered, C.R.C.P 1.3, failure to act with diligence, and C.R.C.P 1.5(a), failure to charge a reasonable fee. This conduct, warranting a fifteen month suspension, demonstrates a pattern of client neglect and dishonesty similar to the ethics issues raised in the instant case.

- Woodford acted with a dishonest or selfish motive. *Id.* at § 9.22(b).

- Woodford engaged in a pattern of misconduct. *Id.* at § 9.22(c).

- Woodford committed multiple offenses during his course of misconduct. *Id.* at § 9.22(d).

- Woodford has failed to cooperate or participate in good faith in these disciplinary proceedings. *Id.* at § 9.22(e).

- Woodford has substantial experience in the practice of law. *Id.* at § 9.22(i).
- Woodford has demonstrated indifference to making restitution to those whose funds he misappropriated or converted. *Id.* at § 9.22(j).

 Pursuant to ABA *Standards* § 4.11, disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. A lawyer's knowing misappropriation of funds, whether belonging to a client or third party, warrants disbarment except in the presence of extraordinary factors in mitigation. *People v. Lavenhar*, 934 P.2d 1355, 1359 (Colo.1997). In the instant case, there are no extraordinary factors in mitigation.

 Pursuant to ABA *Standards* § 4.41(b) and (c), disbarment is also generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client. Woodford's knowing failure to perform services for his clients and his pattern of neglecting client matters and failing to communicate with clients further supports disbarment as the appropriate sanction in this matter. Absent extraordinary factors in mitigation, the Colorado Supreme Court has consistently found disbarment the appropriate sanction when lawyers engage in a pattern of neglect or when they abandon the practice of law and misappropriate client funds. *See e.g. People v. Skaalerud*, 963 P.2d 341 (Colo.1998) (lawyer disbarred for misappropriating settlement proceeds from multiple clients and also abandoning or failing to communicate with multiple clients); *People v. Townshend*, 933 P.2d 1327 (Colo. 1997) (lawyer disbarred for accepting retainers from two clients and then effectively abandoning their matters without refunding the unearned retainers).

 Woodford's further acts of misconduct, including criminal conduct and conduct involving dishonesty, fraud, deceit or misrepresentation, also show a pattern of misconduct that would warrant disbarment. Woodford's failure to respond to reasonable requests for information in connection with the investigation of these matters, together with his failure to participate in proceedings before the Presiding Disciplinary Judge and the Hearing Board, demonstrate Woodford's lack of regard for his obligations as a lawyer and for these proceedings. Pursuant to ABA *Standards* § 4.6, disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to the client.

Considering the nature of Woodford's misconduct, Woodford's mental state, the significant harm or potential harm caused by his misconduct, and the applicable factors in mitigation and aggravation, disbarment is the appropriate sanction for Woodford's misconduct.

### IV. ORDER

It is therefore ORDERED:

1. Robert E. Woodford, attorney registration no. 16379, is DISBARRED from the practice of law in the State of Colorado effective thirty–one days from the date of this Order and his name shall be stricken from the list of attorneys licensed to practice in the state.

2. Respondent is also Ordered to pay restitution to the following individuals and in the following amounts, within ninety days from the date of this Order:

| | |
|---|---|
| Wayne Hoagland | $ 575.00 |
| John Lee | $ 750.00 |
| Jon Neville | $1,500.00 |
| Kenneth Skoglund | $7,000.00 |
| Brenda Neville | $ 500.00 |
| Julie Erickson | $ 900.00 |
| Raven Rudduck | $ 624.00 |
| Janet Nickerson | $ 500.00 |
| David Mog | $4,000.00 |
| Shirley Jones | $ 200.00 |

3. Respondent is Ordered to pay the costs of these proceedings; the Complainant shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days thereafter to submit a response thereto.

COURT USE ONLY

Debora D. Jones, # 16917, Assistant Regulation Counsel, Attorney for Complainant, 600 17th Street, Suite 200–South, Denver, CO 80202

## AMENDED COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### *Jurisdiction*

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on January 9, 1987, and is registered upon the official records of this court, registration no. 16379. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 305 E. Espanola Street, Colorado Springs, Colorado 80907. His home address is 1721 N. Wahsatch Ave., Colorado Springs, CO 80907.

### *HOUGLAND MATTER*

2. Wayne Hougland and his wife, Shell Hougland, met with the respondent on December 14, 2001. The Houglands retained the respondent to file a Chapter 7 Bankruptcy case. An attorney-client relationship was established on that date.

3. The respondent did not prepare a written fee agreement for the Houglands. He did not give the basis or rate of his fees in writing to his clients. The respondent had not previously represented the Houglands.

4. The respondent orally stated that his fee was $750, including the filing fee. He stated that in exchange for payment of $400 at that time, he would file the bankruptcy case, and they could pay the balance when funds were available. The respondent gave the Houglands forms to complete relating to their finances.

5. The Houglands paid the respondent $400 on December 14, 2001. They left the payee line blank. When the check was cashed, "C.M. Boese" was written on the payee line. The check was not deposited into the respondent's trust account or any other trust account.

6. The Houglands completed the forms and returned them to the respondent's office on or about December 27, 2001. Based upon the December 14 discussions, the understood that the respondent would file the bankruptcy case shortly thereafter.

7. The Houglands called on January 3, 2002, to determine whether the respondent had received their completed forms and to ask questions about additional information. The Houglands left two messages asking about the status of their matter and requesting a return call. The respondent received these messages, but the respondent did not return these calls. The respondent made no effort to keep these clients reasonably informed about the status of their matter.

8. The Houglands mailed another check for $175 on January 5, 2002. The endorsement on that check demonstrates that the check was negotiated for cash by the respondent rather than deposited to any bank account. The respondent had not yet filed the bankruptcy case on that date, and thus had not yet earned the initial $400 and certainly not this additional $175.

9. Between January 3, 2002, and February 15, 2002, the Houglands telephoned the respondent 14 times. The respondent received these messages. The Houglands received one returned message from the respondent in the first week of February, stating that the respondent was returning their call. Mr. Hougland telephoned that same afternoon and reached the respondent's secretary, who stated that she would give the respondent the message. The respondent did not return the call, and made no other effort to keep these clients reasonably informed about the status of their matter.

10. When the Houglands could not get return calls from the respondent, or any other status updates from the respondent, and had not received any completed forms for signature and filing, they retained other counsel.

11. On or about March 7, 2002, the Houglands filed a written request for investigation with the Office of Regulation Counsel. On March 13, 2002, a copy of that request for investigation was sent to the respondent at his registered business address with a cover letter. The certified mail receipt was not signed, but the card/receipt was returned to the Office of Regulation Counsel.

12. Subsequent letters were also sent to the respondent at his registered address requesting a response to the request for investigation. The respondent received these letters. Neither the March 13 letter nor subsequent letters to the respondent from the Office of Attorney Regulation Counsel have been answered by the respondent.

13. By letter dated April 18, 2002, the respondent notified the Houglands that he had some additional questions, and upon receiving the required information, would complete the bankruptcy schedules. He did not make reference to their many telephone messages.

14. The respondent did not further communicate with the Houglands. Despite agreeing to do so, the respondent did not prepare or file a bankruptcy petition on the Houglands' behalf. Thus the respondent failed to accomplish those tasks which were necessary to earn the fees paid by the clients pursuant to the parties' agreement.

15. By letter dated April 27, 2002, the Houglands notified the respondent that they had retained other counsel because the respondent had not returned their phone calls and had not completed the bankruptcy filing. They requested return of their $575 payment.

16. The respondent received but has not replied to their request, nor has he responded to the requests that he received from the Office of Attorney Regulation Counsel.

17. The respondent has not accounted for the Houglands' retainer, nor has he given them a refund.

## CLAIM I

**[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]**

18. Paragraphs 1 through 17 are incorporated herein by reference.

19. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

20. The respondent failed to act with reasonable diligence and neglected the client's legal matter by failing to file the Houglands' bankruptcy petition in a timely manner. This failure extended over a period of months.

21. The respondent knew or should have known that his lack of diligence and promptness and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness and/or neglect. The Houglands telephoned the respondent's office many times and left messages inquiring about the status of their bankruptcy case. Despite this, the respondent did not prepare or file the bankruptcy petition as agreed.

22. The respondent's lack of diligence and promptness and/or neglect caused potentially serious injury to the clients.

23. The respondent's failure to act on behalf of his clients violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

**[A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter, and Promptly Comply With Reasonable Requests For Information— Colo. RPC 1.4(a) ]**

24. Paragraphs 1 through 23 are incorporated herein by reference.

25. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly

comply with reasonable requests for information.

26. The respondent failed to keep the clients reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information by failing to communicate with the Houglands. The Houglands telephoned the respondent many times, but received no response. In addition, the Houglands completed the forms provided by the respondent and returned them to the respondent's office. Despite these efforts by the Houglands, the respondent did not communicate with the Houglands, did not promptly comply with their reasonable requests for information, and did not keep them reasonably informed about the status of their legal matter. This failure by the respondent caused the Houglands to retain other counsel.

27. The respondent's failure to communicate with the Houglands violated Colo. RPC 1.4(a).

28. The respondent knew or should have known that he had failed to communicate adequately with his clients over a period of months.

29. The respondent's pattern and practice of failing to communicate with the clients caused potentially serious injury to the clients.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

### [Failure to Provide Written Communication of the Basis or Rate of the Fee—Colo. RPC 1.5(b) ]

30. Paragraphs 1 through 17 are incorporated herein by reference.

31. Colo. RPC 1.5(b) provides that, where a lawyer has not regularly represented a particular client, the basis or rate of the fee shall be communicated to the client, in writing, or within a reasonable time after commencing the representation.

32. The respondent did not prepare a written fee agreement for the Houglands,

nor did he prepare any other writing which outlined the basis or rate of his fee. The respondent had not previously represented the Houglands.

33. The respondent's conduct violated Colo. RPC 1.5(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IV

### [An Attorney Shall Hold Property of Clients or Third Persons Separate from the Attorney's Own Property, with Funds Kept in a Separate Account—Colo. RPC 1.15(a) ]

34. Paragraphs 1 through 17 are incorporated herein by reference.

35. Colo. RPC 1.15(a) provides that, in connection with a representation, an attorney shall hold property of clients or third persons that is in an attorney's possession separate from the attorney's own property.

36. The respondent did not hold the Houglands' payments separate from his own property. He did not deposit their payments into his trust account. Instead, the respondent gave the initial payment to a third person, and he cashed the second payment. Thus, the respondent failed to keep these client funds appropriately identified as client funds and separate from his own property and failed to keep these funds appropriately safeguarded.

37. Through his conduct, the respondent violated Colo. RPC 1.15(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM V

### [A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

38. Paragraphs 1 through 17 are incorporated herein by reference.

39. Colo. RPC 1.15(b) provides a lawyer shall deliver to a client any funds that the client is entitled to receive.

40. The Houglands were entitled to a refund of the fees paid, as the respondent had not performed the agreed-to services. The respondent failed to provide such refund following the Houglands' request. The respondent has continued his failure to deliver these funds to the client. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VI

### [Deposit of Unearned Fees in Trust Account—Colo. RPC 1.15(f)(1) ]

41. Paragraphs 1 through 17 are incorporated herein by reference.

42. Colo. RPC 1.15(f)(1) provides that every attorney in private practice in Colorado shall maintain a trust account, into which trust account funds entrusted to the attorney's care and any advance payment of fees that has not been earned shall be deposited.

43. The Houglands made advance payments to the respondent totaling $575 for services to be performed by the respondent. The respondent did not perform the agreed-to services. The payments received from the Houglands were not for earned fees. The respondent did not perform the agreed-to work which would entitle him to consider the payments as earned fees.

44. The respondent was in private practice and had a trust account.

45. The payments made by the Houglands should have been placed in the respondent's trust account or another trust account. The respondent did not place the payments into his trust account or any other trust account. By his conduct, the respondent violated Colo. RPC 1.15(f)(1).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VII

### [A Lawyer Shall Not Engage in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

46. Paragraphs 1 through 17 are incorporated herein by reference.

47. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

48. The respondent retained the funds paid by the Houglands but did not perform the work which he agreed to do, and therefore failed to earn those funds. Specifically, the respondent agreed to prepare and file the bankruptcy petition for the initial $400.00. Because the respondent failed to prepare and file the bankruptcy petition, the respondent did not earn the initial $400 or subsequent $175.00. The clients requested a refund of the funds paid to the respondent. The respondent failed to refund the payments.

49. The respondent exercised dominion and ownership over these funds which should have been held in a trust account for the clients until earned.

50. The respondent did not have the consent of the clients to use the client funds for his own purposes, or any other purpose other than the clients' purpose.

51. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the clients.

52. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

53. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VIII

**[An Attorney Shall Respond To A Request By The Regulation Counsel For Information Necessary To Carry Out The Performance Of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); and A Lawyer Shall Not Knowingly Fail to Respond Reasonably To A Lawful Demand for Information From A Disciplinary Authority—Colo. RPC 8.1(b) ]**

54. Paragraphs 1 through 17 are incorporated herein by reference.

55. C.R.C.P. 251.5(d) provides that it is attorney misconduct to fail to respond without good cause shown to a request by the Regulation Counsel made in the performance of Regulation Counsel's duties.

56. Colo. RPC 3.4(c) provides that an attorney shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

57. Colo. RPC 8.1(b) provides that a lawyer shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

58. The respondent received letters from the Office of Regulation Counsel requesting information in relation to the Houglands' request for investigation. The respondent did not answer those requests.

59. The respondent failed to respond, without good cause shown, to a request by the Regulation Counsel in the performance of Regulation Counsel's duties.

60. The respondent knew of his obligations under C.R.C.P. 251.5(d). Despite such knowledge, the respondent knowingly disobeyed said rule. The respondent made no assertion that he need not respond.

61. The letters from Regulation Counsel included lawful demands for information from a disciplinary authority. Nevertheless, the respondent knowingly failed to respond to these lawful demands.

62. Through his conduct, the respondent violated C.R.C.P. 251.5(d), and thus violated Colo. RPC 3.4(c). Such conduct also violated Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### NEVILLE MATTER

63. In February 2001, Jon Neville consulted with the respondent regarding bankruptcy relief. Mr. Neville paid the respondent $700 in cash as a flat fee for the purpose of filing a bankruptcy petition promptly, and handling that bankruptcy matter. Thus, an attorney-client relationship was established.

64. Also in approximately February 2001, Mr. Neville and his wife decided to divorce. They agreed on the separation of assets and wanted only to formalize their dissolution. Mr. Neville contacted the respondent regarding this dissolution.

65. Mr. Neville's wife, who lived in California, sent a money order in the amount of $500 payable to the respondent. The respondent agreed to finalize the divorce for a flat fee of $500.

66. Following completion of the petition, Mr. Neville executed the petition in the respondent's office. The respondent's assistant, Raven Rudduck, represented to Mr. Neville that the petition would be sent to Mr. Neville's wife in California for her execution. The wife never received the petition, and no dissolution of marriage action was ever filed by the respondent. Thus, the respondent failed to accomplish those tasks that were necessary to earn the $500 fee for the divorce.

67. In approximately March 2001, Mr. Neville retained the respondent to assist in the replevin of an automobile sold to Corina Cordova. Mr. Neville paid the respondent $500, and the respondent agreed to complete the replevin action for this fee. Mr. Neville and Ms. Rudduck did some initial research as to assets owned by Ms. Cordova; the respondent took no substantive action against Ms. Cordova. The respondent did not initiate a civil action against Ms. Cordova. Thus, the respondent failed to accomplish those tasks

that were necessary to earn the $500 fee in the Cordova matter.

68. Mr. Neville thereafter left many messages for the respondent about the filing of the bankruptcy, the divorce, and the progress in retrieving the car. The respondent received these messages. Several weeks after phoning, Ms. Rudduck telephoned Mr. Neville, but she had no specific information in response to Mr. Neville's inquiries. Mr. Neville requested that the respondent call. The respondent did not respond to Mr. Neville's reasonable inquiry, and failed to keep the client reasonably informed about the status of his legal matter.

69. On or about June 8, 2001, more than four months after being retained, the respondent filed a bankruptcy petition on Mr. Neville's behalf. This filing four months later was not done promptly as agreed to by the respondent in his initial meeting with the client.

70. In approximately March 2002, Mr. Neville was stopped for a routine traffic violation. At that time, Mr. Neville learned that his driver's license had been suspended approximately one and one-half years earlier. At a subsequent hearing at the Department of Motor Vehicles, Mr. Neville's license was revoked. Mr. Neville consulted with the respondent regarding an appeal of the revocation.

71. Mr. Neville asked that the $500 paid in the Cordova matter be credited toward the driver's license matter. The respondent agreed. Mr. Neville paid the respondent an additional $500 to handle the revocation appeal.

72. Mr. Neville and the respondent agreed that the $1,000 paid by Mr. Neville would be a flat fee that would completely cover the respondent's work on behalf of Mr. Neville in the license revocation appeal. However, the respondent took no action in this new legal matter, and thus did not earn any portion of this fee. The respondent did not return the calls made by Mr. Neville after March 2002 regarding the license matter, did not promptly comply with reasonable requests for information, and did not keep

him reasonably informed about the status of his legal matter.

73. Although the respondent had initial conversations with Mr. Neville in February 2001, and thereafter when additional legal matters arose, the respondent did not return any of Mr. Neville's calls regarding the status of work on any of the legal matters, and did not otherwise keep the client reasonably informed about the status of his legal matters. In Ms. Rudduck's two communications (regarding the asset search in the Cordova matter and responding to a call by Mr. Neville later in 2001), she did not answer the inquiries of Mr. Neville regarding the status of his legal matters.

74. The respondent never filed anything with the Department of Motor Vehicles, and took no other action in the license revocation matter. He thus failed to perform any of the services required of him before he could consider the $1,000 flat fee earned. Mr. Neville was unable to reinstate his Colorado driver's license.

75. There is no written fee agreement on any of Mr. Neville's matters. The respondent never provided any writing explaining the basis or rate in any of the matters for which he was retained by Mr. Neville. The respondent had not previously represented Mr. Neville.

## CLAIM IX

**[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]**

76. Paragraphs 63 through 75 are incorporated herein by reference.

77. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

78. The respondent failed to act with reasonable diligence and neglected the client's legal matters by failing to file Mr. Neville's bankruptcy petition in a timely manner, failing to file the divorce action, failing to bring

suit against Ms. Cordova, and failing to appeal the drivers license revocation.

79. The respondent's failure to act on behalf of his client violated Colo. RPC 1.3.

80. The respondent knew or should have known that his lack of diligence and promptness and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness and/or neglect. Mr. Neville telephoned the respondent's office many times in 2001 and 2002 and left messages inquiring as to the status of his bankruptcy case and other legal matters. Despite this, the respondent did not perform the work agreed to in a timely manner in the bankruptcy case and he did not file the divorce or pursue the drivers license matter.

81. The respondent's lack of diligence and promptness and/or neglect caused potentially serious injury to the client.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM X

[A Lawyer Shall Keep a Client Reasonably Informed About the Status of the Matter, and Promptly Comply with Reasonable Requests for Information—Colo. RPC 1.4(a) ]

82. Paragraphs 63 through 75 are incorporated herein by reference.

83. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

84. The respondent failed to keep the client reasonably informed about the status of the legal matters and failed to comply promptly with reasonable requests for information by failing to communicate with Mr. Neville. Mr. Neville telephoned the respondent many times in 2001 and 2002, but received no response. The respondent was aware of Mr. Neville's attempts to communicate with him. Despite the efforts by Mr. Neville to obtain status reports on all his legal matters, the respondent did not comply with those reasonable requests for information and failed to keep the client reasonably informed about the status of his legal matter.

85. The respondent's failure to communicate with Mr. Neville violated Colo. RPC 1.4(a).

86. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

87. The respondent's pattern and practice of failing to communicate with the client caused potentially serious injury to the client.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XI

[Failure to Provide Written Communication of the Basis or Rate of the Fee—Colo. RPC 1.5(b) ]

88. Paragraphs 63 through 75 are incorporated herein by reference.

89. Colo. RPC 1.5(b) provides that, where a lawyer has not regularly represented a particular client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation.

90. The respondent did not prepare a written fee agreement for Mr. Neville, nor did he prepare any other writing which outlined the basis or rate of his fee. The respondent had not represented Mr. Neville in a previous matter. The respondent's conduct violated Colo. RPC 1.5(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XII

[A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

91. Paragraphs 63 through 75 are incorporated herein by reference.

92. Colo. RPC 1.15(b) provides that upon receiving funds or other property in which a client has an interest, the lawyer shall, upon request by the client, render a full accounting regarding such property.

93. In June 2002, Mr. Neville requested a refund of the $1,500 in fees paid for the divorce and license matters, as the respondent had not performed the agreed-to services. The respondent refused to provide such refund. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XIII

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

94. Paragraphs 63 through 75 are incorporated herein by reference.

95. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

96. The respondent retained the $1,500 paid by Mr. and Ms. Neville, despite failing to accomplish those tasks necessary to earn such fees. The client requested a refund of the funds paid to the respondent. The respondent nevertheless failed to refund the payments.

97. The respondent exercised dominion and ownership over funds which he held in constructive trust for this client.

98. The respondent did not have the consent of the client to use the client funds for his own purposes, or any other purpose other than this client's purpose.

99. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the client.

100. Through his knowing conversion or misappropriation of client funds, the respon-

dent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

101. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### LEE MATTER

102. On about September 25, 2001, John Lee met with the respondent and retained him to file a bankruptcy petition, file necessary schedules and attend the creditors meeting. Mr. Lee paid the respondent $750 by check on that day—$550 as a total flat fee payment of the respondent's fees, and $200 for the filing fee. The respondent agreed to this flat fee. The respondent did not place the $750 of client money into a trust account. Instead, the respondent negotiated the check for cash.

103. The negotiation of Mr. Lee's check was done at a time when the respondent had not performed the agreed-to services, and had not incurred a filing fee expense. Thus the respondent had not accomplished, pursuant to the parties' agreement, those tasks which were necessary to consider the fees earned, and costs expended, at that time.

104. Mr. Lee was given a packet of financial forms to fill out by Raven Rudduck, the respondent's assistant.

105. An attorney-client relationship was established.

106. The respondent did not provide a written fee agreement. He provided no writing explaining the basis or rate of his fee. The respondent had not previously represented Mr. Lee.

107. Approximately five weeks later, Mr. Lee returned to the respondent's office with his completed forms. No one was there. Mr. Lee was unable to reach the respondent or Raven at the telephone numbers he had been given. He left messages requesting that the respondent call him. The respondent received these messages, but nevertheless failed to respond, did not promptly comply with reasonable requests for information,

and did not keep the client reasonably informed about the status of his legal matter.

108. In approximately the middle of November 2001, Mr. Lee returned to the respondent's office. Mr. Lee left his financial forms pursuant to a sign on the door directing clients to slip their material through a slot in the door.

109. Mr. Lee subsequently attempted to reach the respondent or Raven. The respondent received the messages left by Mr. Lee; nevertheless, the respondent failed to respond. The respondent did not promptly comply with the client's reasonable requests for information, and did not keep him reasonably informed about the status of his legal matter.

110. The respondent did not file the bankruptcy petition as he had agreed. Thus the respondent failed to accomplish those tasks which were necessary to earn the $550 in fees paid by the client pursuant to the parties' agreement, and failed to pay the $200 given to him in trust for a filing fee.

111. In January 2002, Mr. Lee's company downsized and he returned to Iowa shortly thereafter. Mr. Lee retained an Iowa attorney and filed bankruptcy after living in Iowa for over 90 days, the time required for the Iowa court to exercise jurisdiction.

112. The respondent sent a letter dated May 8, 2002, to Mr. Lee telling him that he should call for an appointment. The respondent did not include Mr. Lee's schedules or a bankruptcy petition for Mr. Lee's signature.

113. The respondent effectively terminated the attorney-client relationship by failing to perform the agreed-to work and failing to communicate adequately with Mr. Lee.

### CLAIM XIV

[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]

114. Paragraphs 102 through 113 are incorporated herein by reference.

115. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

116. The respondent failed to act with reasonable diligence and neglected the client's legal matter by failing to file Mr. Lee's bankruptcy petition in a timely manner.

117. The respondent's failure to act on behalf of his client violated Colo. RPC 1.3.

118. The respondent knew or should have known that his lack of diligence and promptness and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness and/or neglect. Mr. Lee telephoned the respondent's office many times and left messages regarding the status of their bankruptcy case. Despite this, the respondent did not prepare the bankruptcy petition.

119. The respondent's lack of diligence and promptness and/or neglect caused potentially serious injury to the client.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XV

[A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter, and Promptly Comply With Reasonable Requests For Information—Colo. RPC 1.4(a) ]

120. Paragraphs 102 through 113 are incorporated herein by reference.

121. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

122. The respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information by failing to communicate with Mr. Lee. Mr. Lee telephoned the respondent many times, but received no response. In addition, Mr. Lee completed the forms provided by the respondent and returned them to the respondent's office. Despite these

efforts by Mr. Lee, the respondent did not communicate with Mr. Lee, did not promptly comply with reasonable requests for information, and did not keep him reasonably informed about the status of his legal matter.

123. The respondent's failure to communicate with Mr. Lee violated Colo. RPC 1.4(a).

124. The respondent knew or should have known that he had failed to communicate adequately with his clients over an extended period of months.

125. The respondent's pattern and practice of failing to communicate with the client caused potentially serious injury to the client.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XVI

### [Failure to Provide Written Communication of the Basis or Rate of the Fee—Colo. RPC 1.5(b) ]

126. Paragraphs 102 through 113 are incorporated herein by reference.

127. Colo. RPC 1.5(b) provides that, where a lawyer has not regularly represented a particular client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation.

128. The respondent did not prepare a written fee agreement for Mr. Lee, nor did he prepare any other writing which outlined the basis or rate of his fee. The respondent had not previously represented Mr. Lee. The respondent's conduct violated Colo. RPC 1.5(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XVII

### [A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

129. Paragraphs 102 through 113 are incorporated by reference.

130. Colo. RPC 1.15(b) provides that upon receiving funds or other property in which a client has an interest, the lawyer shall deliver to a client those funds to which the client is entitled.

131. In his request for investigation, sent to the respondent on June 3, 2002, Mr. Lee requested a refund of the payment he made to the respondent. However, the respondent did not provide such refund. The respondent was not entitled to retain the $550 fee because he did not perform the work agreed to. Thus the respondent failed to accomplish those tasks which were necessary to earn the fees paid by the client pursuant to the parties' agreement. The respondent was not entitled to retain the $200 cost retainer, as he did not file the petition and thus did not incur that expense. The respondent's conduct in this regard violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XVIII

### [A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

132. Paragraphs 102 through 113 are incorporated by reference.

133. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

134. The respondent retained the funds paid by Mr. Lee despite not doing the work agreed to. The respondent did not file a bankruptcy petition for Mr. Lee, yet he retained the $200 filing fee paid by Mr. Lee. Thus the respondent failed to accomplish those tasks which were necessary to earn the fees and cost retainer paid by the client pursuant to the parties' agreement. The client requested a refund of all the funds paid to the respondent. The respondent failed to refund the payment.

135. The respondent exercised dominion and ownership over funds which should have been held in a trust account on behalf of this client.

136. The respondent did not have the consent of the client to use the client funds for his own purposes, or any other purpose other than this client's purpose.

137. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the client.

138. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

139. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### SKOGLUND MATTER

140. On June 25, 2001, Kenneth Skoglund hired the respondent to represent Mr. Skoglund in regard to his application for business operation of a gravel pit. Mr. Skoglund's application had been denied, while another applicant's had been approved by the same board of County Commissioners. As a result, Mr. Skoglund wished to file suit against those County Commissioners.

141. Mr. Skoglund paid the respondent $2,000 at that time. Mr. Skoglund's check (number 6565, dated June 25, 2001) was endorsed by the respondent and paid over to Christine Boese. It was not deposited in any trust account. At the time the check was cashed, the respondent had not earned the entire $2,000 payment.

142. An attorney-client relationship was established.

143. Mr. Skoglund paid an additional $5,000 on July 20, 2001. Mr. Skoglund's check (number 6606, dated July 20, 2001) was endorsed by the respondent and apparently cashed. It was not deposited in any trust account. At the time the respondent cashed the check, the respondent had not performed the work necessary to consider the fees earned.

144. The respondent reviewed information on the proposed gravel pit and the application. The respondent accompanied Mr. Skoglund to the final hearing at which the permit was denied. The respondent agreed to file a civil action against the County Commissioners on behalf of Mr. Skoglund.

145. The respondent informed Mr. Skoglund that there was a two-year time period in which to file such suit. He did not inform Mr. Skoglund of the requirement that notice be given to a governmental entity within 180 days of injury, nor did the respondent file such a notice. The respondent never filed a civil action or any notice.

146. In addition, Mr. Skoglund wanted the respondent to prepare a trust which would shield Mr. Skoglund's assets from creditors. At the time Mr. Skoglund paid the $5,000 retainer, the respondent and Mr. Skogland agreed that the respondent would also prepare a draft trust document, and the $5,000 payment would cover all fees for that trust. The respondent never prepared the trust. Thus the respondent failed to accomplish those tasks which were necessary to earn the fees paid by the client pursuant to the parties' agreement.

147. The respondent did not provide Mr. Skoglund with a written fee agreement. He did not provide a written explanation of the basis or rate of his fee.

148. Mr. Skoglund understood that additional fees would be required after the initial work was done in relation to the gravel pit application. Mr. Skoglund and the respondent agreed that in exchange for the $7,000 paid, the respondent would file a civil action against the County Commissioners and prepare a trust document to shelter Mr. Skoglund's assets from claims of creditors.

149. Mr. Skoglund requested that the respondent bring a collection suit against a contractor who had refused to pay Mr. Skoglund for gravel. When they discussed this matter several weeks later, the respondent

informed Mr. Skoglund that the collection suit had been filed. In fact, the respondent filed no such suit. This statement was false at the time the respondent made it. The respondent knew the statement was false at the time the respondent made the statement.

150. Mr. Skoglund attempted many times to contact the respondent but was unsuccessful. Mr. Skoglund left messages for the respondent. The respondent received these messages. The respondent failed to respond, did not promptly comply with reasonable requests for information, and did not keep the client reasonably informed about the status of his legal matters involving the County Commissioner suit, the preparation and creation of a trust, and the collection suit.

151. Mr. Skoglund finally went to the respondent's office in approximately June 2002. At that time the respondent informed Mr. Skoglund that Ms. Rudduck had left unexpectedly, which had caused some difficulties. The respondent informed Mr. Skoglund that he was still working on the County Commissioner lawsuit.

152. Mr. Skoglund sent a certified letter to the respondent dated June 20, 2002, requesting return of his files and refund of his payment. The certified letter was returned unclaimed. Mr. Skoglund sent another letter by Federal Express on August 7, 2002, with the same request; the information provided by Federal Express indicates that delivery was refused.

153. On September 3, 2002, the respondent wrote Mr. Skoglund a letter stating that suit against the County Commissioners was not warranted. He stated he would be returning Mr. Skoglund's files shortly. Despite this statement, the respondent failed to do so. The respondent did not mention return of Mr. Skoglund's funds in his letter. The respondent took no further action in the preparation and creation of the trust or in the collection matter.

154. The respondent has not answered the request for investigation filed by Mr. Skoglund with the Office of Attorney Regulation Counsel, despite having received the same and despite the rule requirement that he do so.

155. The respondent failed to return the funds.

## CLAIM XIX

### [A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]

156. Paragraphs 140 through 155 are incorporated by reference.

157. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

158. The respondent failed to act with reasonable diligence and neglected the client's legal matter by failing to proceed with preparation of a trust, failing to file the required notice against the county commissioners, and failing to pursue the contractor.

159. The respondent knew or should have known that his lack of diligence and promptness and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness and/or neglect. Mr. Skoglund telephoned the respondent's office many times and left messages regarding the status of his matters. Despite this, the respondent did not perform the work agreed to. He did not file a suit against the county, prepare the trust document or perform the legal services relating to the contractor matter.

160. The respondent's failure to act on behalf of his client violated Colo. RPC 1.3.

161. The respondent's lack of diligence and promptness and/or neglect caused potentially serious injury to the client.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XX

**[A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter, Promptly Comply With Reasonable Requests For Information—Colo. RPC 1.4(a) ]**

162. Paragraphs 140 through 155 are incorporated by reference.

163. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

164. The respondent failed to keep the client reasonably informed about the status of the legal matters and failed to comply promptly with reasonable requests for information by failing to communicate with Mr. Skoglund. Mr. Skoglund telephoned the respondent many times, but received no response. In addition, Mr. Skoglund completed the forms provided by the respondent and returned them to the respondent's office. Despite these efforts by Mr. Skoglund, the respondent did not communicate with Mr. Skoglund.

165. The respondent also failed to keep the client reasonably informed about the status of the legal matters when he misled his client into believing that a collection suit was filed.

166. The respondent's failure to communicate with Mr. Skoglund violated Colo. RPC 1.4(a).

167. The respondent's pattern and practice of failing to communicate with the client caused potentially serious injury to the client.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXI

**[Failure to Provide Written Communication of the Basis or Rate of the Fee—Colo. RPC 1.5(b) ]**

168. Paragraphs 140 through 155 are incorporated by reference.

169. Colo. RPC 1.5(b) provides that, where a lawyer has not regularly represented a particular client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation.

170. The respondent did not prepare a written fee agreement for Mr. Skoglund, nor did he prepare any other writing which outlined the basis or rate of his fee. The respondent had not previously represented Mr. Skoglund. The respondent's conduct violated Colo. RPC 1.5(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXII

**[An Attorney Shall Hold Property of Clients or Third Persons Separate from the Attorney's Own Property, with Funds Kept in a Separate Account—Colo. RPC 1.15(a) ]**

171. Paragraphs 140 through 155 are incorporated by reference.

172. Colo. RPC 1.15(a) provides that, in connection with a representation, an attorney shall hold property of clients or third persons in an attorney's possession separate from the attorney's own property.

173. The respondent did not hold Mr. Skoglund's payments separate from his own property. The respondent never prepared the trust which he had agreed to prepare in exchange for Mr. Skoglund's payment. Thus the respondent failed to accomplish those tasks which were necessary to earn the fees paid by the client pursuant to the parties' agreement. The respondent did not deposit the client payments into his trust account or any other trust account, even though some portion of the fee payment was unearned at that time. Instead, the respondent gave the initial payment to a third person, and he cashed the second payment.

174. Through his conduct, the respondent violated Colo. RPC 1.15(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXIII

[A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

175. Paragraphs 140 through 155 are incorporated by reference.

176. Colo. RPC 1.15(b) provides that upon receiving funds or other property in which a client has an interest, the lawyer shall deliver to the client those funds which the client is entitled to receive.

177. Although Mr. Skoglund requested a refund of the fees paid, as the respondent had not performed the agreed-to services, the respondent failed to provide any refund. Certainly the respondent had not earned all of the $7000 in fees, as he had not prepared and created the trust on behalf of Mr. Skoglund. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXIV

[Deposit of Unearned Fees in Trust Account—Colo. RPC 1.15(f)(1) ]

178. Paragraphs 140 through 155 are incorporated by reference.

179. Colo. RPC 1.15(f)(1) provides that every attorney in private practice in Colorado shall maintain a trust account, into which trust account funds entrusted to the attorney's care and any advance payment of fees that has not been earned shall be deposited.

180. Mr. Skoglund made payments to the respondent totaling $7,000 for services to be performed by the respondent. The payments made by Mr. Skoglund should have been placed in the respondent's trust account or some trust account. The respondent did not place the payments into his trust account or any trust account. By his conduct, the respondent violated Colo. RPC 1.15(f)(1).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXV

[Upon Termination of Representation, a Lawyer Shall Take Steps to Extent Reasonably Practicable to Protect a Client's Interests–Colo. RPC 1.16(d) ]

181. Paragraphs 140 through 155 are incorporated by reference.

182. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as surrendering papers and property to which the client is entitled, and refunding any advanced payment of fee that has not been earned.

183. When the respondent did not perform the work requested, Mr. Skoglund requested a refund of the retainer, as well as return of his files. This constitutes termination of the representation. The respondent has not returned the retainer or made any accounting of what portion he may have earned, and he has not returned the files.

184. Through his conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XXVI

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

185. Paragraphs 140 through 155 are incorporated by reference.

186. Colo. RPC 8.4(c) provides that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

187. The respondent retained funds paid by Mr. Skoglund despite not doing the work agreed to in relation to the trust. Thus the respondent failed to accomplish those tasks which were necessary to earn the fees paid by the client pursuant to the parties' agreement. The client requested a refund of the

funds paid to the respondent. The respondent did not refund any of the payments.

188. The respondent exercised dominion and ownership over funds which should have been held in a trust account on behalf of this client.

189. The respondent did not have the consent of the client to use the client funds for his own purposes, or any other purpose other than this client's purpose.

190. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the client.

191. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

192. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XXVII

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation—Colo. RPC 8.4(c) ]**

193. Paragraphs 140 through 155 are incorporated by reference.

194. The respondent's statement to Mr. Skoglund that a collection suit had been filed was false. The respondent knew that he had not filed any such suit. The respondent never corrected this false statement.

195. The respondent knew the statement about the purported collection suit was not true when he made it.

196. The respondent intentionally and knowingly told his client that the case had been filed when this was not so. This constitutes conduct involving deceit and/or dishonesty. The respondent engaged in such conduct for a dishonest and selfish motive, i.e., to cover up his neglect to his client.

197. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XXVIII

**[An Attorney Shall Respond To A Request By The Regulation Counsel For Information Necessary To Carry Out The Performance Of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); A Lawyer Shall Not Knowingly Fail to Respond Reasonably To A Lawful Demand for Information From A Disciplinary Authority—Colo. RPC 8.1(b) ]**

198. Paragraphs 140 through 155 are incorporated herein by reference.

199. C.R.C.P. 251.5(d) provides that it is attorney misconduct to fail to respond without good cause shown to a request by the Regulation Counsel made in the performance of Regulation Counsel's duties.

200. Colo. RPC 3.4(c) provides that an attorney shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

201. Colo. RPC 8.1(b) provides that a lawyer shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

202. The respondent received letters requesting information in relation to Mr. Skoglund's request for investigation. The letters contained lawful demands for information from a disciplinary authority. These letters were sent to the respondent at his registered address. The respondent received these letters. The respondent did not answer those requests, despite his obligation to do so and the respondent's knowledge of such obligation. The respondent made no assertion that no valid obligation existed.

203. The respondent violated C.R.C.P. 251.5, and thus violated Colo. RPC 3.4(c). He also violated Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### COATES MATTER

204. In March of 2000, Paulette Coates hired the respondent to file a bankruptcy on her behalf. At that time, Ms. Coates explained to the respondent that her main objective in filing bankruptcy was to discharge income tax liens and related events which had transpired previously. In 1995, Ms. Coates had filed a federal income tax return, on which she had changed language from "taxable wages" to "non-taxable wages" on the W–2 and tax return, and denied that any tax was due. The IRS did not consider this a valid tax return, and claimed that she had underpaid her taxes. Ms. Coates filed no income tax returns for the years 1996, 1997, 1998, or 1999, although she received taxable income during those years.

205. In 1995 Ms. Coates had sold real property in California through a lease/purchase agreement. Ms. Coates remained the legal title holder on that property, and she remained the obligor on the mortgage. Also in 1995, Ms. Coates purchased real property in Colorado. She was the obligor on that mortgage as well. Her debts exceeded her assets.

206. On or about July 1, 1997, Ms. Coates transferred all of her assets to the P.S.C. Family Trust ("the Trust"). (The respondent did not prepare the Trust documents.) She received no asset in exchange, and she remained obligated on the related mortgages. Thereafter, the Trust became the apparent owner of Associated Lenders, for which Ms. Coates performed services. The income generated by Ms. Coates was paid directly to the Trust and she received no salary. No entity paid income taxes on the income generated by Ms. Coates.

207. When Ms. Coates consulted the respondent, she described the arrangement which had been established, and he informed her that he was familiar with this type of trust. Ms. Coates informed the respondent that her wages were being garnished for a tax debt.

208. The respondent did not advise Ms. Coates that her state and federal income taxes were not dischargeable in bankruptcy if the necessary tax returns were not filed, pursuant to 11 U.S.C. § 523(a)(1).

209. The respondent did not inform Ms. Coates that the Trust would not shield assets from creditor claims which arose prior to the 1997 transfer, pursuant to C.R.S. § 38–10–111. He did not tell her that the bankruptcy trustee might attempt to set aside the transfer as a fraudulent conveyance, pursuant to 11 U.S.C. § 548(a)(1), or the legal basis for such trustee action. He told her that filing bankruptcy was an appropriate procedure to remedy her problems.

210. Ms. Coates paid the respondent $550 for attorney fees plus the $200 filing fee. The respondent agreed to file the bankruptcy petition and schedules, and attend the creditors meeting on her behalf for this flat fee. Thus, an attorney-client relationship was formed.

211. Ms. Coates executed the bankruptcy petition on April 21, 2000. The petition was filed that same day. The original schedules included more than $285,000 in unsecured claims, but listed no interests in real property.

212. A creditors meeting was held on May 26, 2000. Ms. Coates met with the respondent outside of the room where the creditors meeting would take place. The respondent informed Ms. Coates that he was concerned that the large amount of unsecured debt might be a "red flag" for the trustee. The respondent instructed Ms. Coates not to mention the Trust.

213. Jeff Weinman, the Trustee in the bankruptcy case, questioned Ms. Coates about her debts. Ms. Coates stated that her Lakewood home had been sold to the Trust, and the GMAC loan was a first mortgage on the home she had sold in California. However, after Ms. Coates' testimony, the respondent falsely stated to Mr. Weiman that the GMAC loan (1) was related to an automobile,

(2) was incorrectly listed, and (3) would be amended. All three statements were false.

214. The respondent knew that these statements referred to in the above paragraph were not correct at the time he made them.

215. Afterward, Ms. Coates was concerned that they had misled the trustee regarding the GMAC loan, and relayed those concerns to the respondent. The respondent informed her that everything was fine. The respondent did not correct his knowing misrepresentation to the trustee. The respondent did not advise his client to correct the misrepresentations.

216. Following her bankruptcy discharge on or about August 1, Ms. Coates believed that all debts, including the tax claims, had been discharged. Shortly thereafter, Trustee Weinman informed Ms. Coates that the transfer of her Lakewood real property was a fraudulent conveyance that would be avoided. In addition, the Colorado Revenue Department continued its collection efforts related to unpaid Colorado income taxes. In March 2001, Trustee Weinman filed an adversary proceeding in the bankruptcy case to set aside the transfer or collect the value of the property.

217. During the interim months, Ms. Coates tried unsuccessfully to reach the respondent. She left numerous telephone messages in August 2000. The respondent received these messages; nevertheless, the respondent did not return her calls, did not promptly comply with reasonable requests for information, and did not keep the client reasonably informed about the status of her legal matter.

218. In August 2000, when Ms. Coates could not reach the respondent, she retained Steven Abelman to represent the Trust in relation to the claims of Mr. Weinman.

219. On or about August 27, 2000, the respondent wrote Ms. Coates to inform her that he had communicated with Mr. Abelman. The respondent had sent Mr. Abelman copies of research which the respondent believed supported the position that the Trust was valid. He noted Mr. Abelman's concern

that the trustee would take the position that the real estate had been transferred into the Trust without adequate consideration (full market value). The respondent stated that the issue would be the state of mind of Ms. Coates, in order to determine whether she intended to defraud creditors. He stated, "The mere fact that the property was transferred without full market price paid should not be sufficient to show fraud." The respondent told Ms. Coates that the situation appeared to be "well in hand at this time." (The respondent had not yet withdrawn from representation of Ms. Coates.)

220. The respondent did not inform Ms. Coates of the Bankruptcy Code's definition of fraudulent conveyance. 11 USC § 548(a)(1) provides that "fraudulent transfer" includes (A) a transfer of an interest in property made either with the intent to hinder, delay, or defraud a creditor, **or** (B) a transfer for which the debtor received less than reasonably equivalent value in exchange for such transfer, made while the debtor was insolvent or which caused the debtor to become insolvent as a result of such transfer. Mr. Abelman later advised Ms. Coates of these provisions and recommended settlement because of the very poor chance of a successful defense.

221. The trust (represented by Mr. Abelman) and Trustee Weinman reached a settlement in early November 2001, pursuant to which Ms. Coates agreed to pay the bankruptcy trustee $20,000. Thereafter, Ms. Coates transferred the Lakewood property to her husband, who obtained new financing on the property so that the settlement amount could be paid.

222. On November 16, 2001, the respondent moved to withdraw from representation of Ms. Coates. His motion was granted on December 5, 2001.

## CLAIM XXIX
### [A Lawyer Shall Provide Competent Representation—Colo. RPC 1.1]

223. Paragraphs 204 through 222 are incorporated by reference.

224. Colo. RPC 1.1 provides that a lawyer shall provide competent representation to a

client, and that competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

225. The respondent was incompetent in his representation of Ms. Coates in the bankruptcy case. The tax obligations of Ms. Coates were not dischargeable because proper income tax returns had not been filed. *See* 11 U.S.C. § 523(a)(1). The respondent failed to advise his client competently on this issue. The respondent thus violated Colo. RPC 1.1.

226. The respondent incompetently advised Ms. Coates that the trust would be valid against claims of creditors, including tax claimants, when this was not so. *See* C.R.S. § 38–10–111. Through this advice, the respondent violated Colo. RPC 1.1.

227. In addition, the respondent was incompetent in his advice to Ms. Coates that the trustee's fraudulent conveyance claim would fail based upon Ms. Coates' state of mind, contrary to the Bankruptcy Code. *See* 11 U.S.C. § 548(a)(1). Through this advice, the respondent violated Colo. RPC 1.1.

228. The respondent's incompetence caused potentially serious injury to the client.

229. WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XXX

[A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter, Promptly Comply With Reasonable Requests For Information—Colo. RPC 1.4(a) ]

230. Paragraphs 204 through 222 are incorporated by reference.

231. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

232. The respondent violated Colo. RPC 1.4(a) by failing to communicate with Ms. Coates. Although she telephoned him numerous times, he did not communicate with her timely regarding the bankruptcy case, did not promptly comply with reasonable requests for information, and did not keep the client reasonably informed about the status of her legal matter.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XXXI

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation—Colo. RPC 8.4(c) ]

233. Paragraphs 204 through 222 are incorporated by reference.

234. The respondent violated Colo. RPC 8.4(c) by telling Trustee Weinman that the GMAC loan related to an automobile loan, was incorrectly listed, and would be amended when these statements were not true. The respondent knew these statements were false at the time he made them. Immediately after the creditors meeting, Ms. Coates pointed this out to the respondent, but he did not correct this misrepresentation. Thus, the respondent continued to knowingly engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; that the respondent be appropriately disciplined for such misconduct; that the respondent be required to refund fees to the client, and/or the Client Protection Fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution to third parties; that the respondent be required to return client files (or other client property); that the respondent be required to take any other remedial action appropriate under the circumstances; and that the respondent be assessed the costs of this proceeding.

DATED this 3rd day of April, 2003.

Debora D. Jones, # 16917
Assistant Regulation Counsel
Attorney for Complainant

*Certificate of Mailing*

I hereby certify that one copy of the foregoing **Amended Complaint** was placed in the United States mail, postage prepaid, this 3rd day of April, 2003, and addressed to:

Robert E. Woodford, 305 E. Espanola Street, Colorado Springs, CO 80907

Robert E. Woodford, 1721 N. Wahsatch Cove, Colorado Springs, CO 80907–7601

Robert E. Woodford, P.O. Box 8108, Colorado Springs, CO 80933

## COURT USE ONLY

Debora D. Jones, # 16917, Assistant Regulation Counsel, John S. Gleason, # 15011, Regulation Counsel, Attorneys for Complainant, 600 17th Street, Suite 200–South, Denver, CO 80202

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### *Jurisdiction*

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on January 9, 1987, and is registered upon the official records of this court, registration no. 16379. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 305 E. Espanola Street, Colorado Springs, Colorado 80907; his home address is 1721 N. Wahsatch Ave., Colorado Springs, CO 80907.

### *ERICKSON MATTER*

2. Julie Erickson retained the respondent to prepare a trust to protect her assets from creditors. She paid the respondent $3,000 as a flat fee for this service. An attorney-client relationship was established on that date.

3. The respondent prepared a trust document for Ms. Erickson. The name of the trust was the Plyler Family Trust.

4. Later the respondent represented Ms. Erickson in her divorce from Montie Plyler. For some unexplained reason Mr. Plyler filed a second divorce action, and the respondent agreed to represent Ms. Erickson in that case. Ms. Erickson paid the respondent a $1,000 retainer.

5. The respondent did no work on the dissolution of marriage action case. Ms. Erickson asked the respondent to use the $1,000 retainer as fees for representation of Lisa Teel and Clayton Davis. The respondent agreed.

6. Despite having performed no work for Ms. Teel and Mr. Davis in their individual divorces, the respondent told Ms. Erickson that divorce petitions had been filed on behalf of Ms. Teel and Mr. Davis. These statements were false, and the respondent knew they were false at the time he made them. The respondent did not correct these false statements.

7. The respondent prepared a new trust document for Ms. Erickson, changing only the name of the trust and the trustees. The trust was now entitled the Alstroemeria Trust; the new trustees were the respondent and Raven Rudduck, the respondent's secretary at that time. The respondent prepared a quitclaim deed which transferred title to Ms. Erickson's house to the Alstroemeria Trust.

8. In early 2002, the respondent drafted an answer on behalf of Ms. Erickson to a separate civil complaint filed by Mr. Plyler. Upon inquiry, the respondent again stated to Ms. Erickson that petitions had been filed in both the Davis and Teel divorce cases. This statement was false.

9. On March 22, 2002, Ms. Erickson hand-delivered a letter dated March 12, 2002, to the respondent's office. The letter stated that she had learned that no dissolution actions had been filed on behalf of Mr. Davis or Ms. Teel. She directed that the respondent do no work on the matters and refund $900 of the $1,000 retainer she had paid the respondent. Ms. Erickson also hand-delivered a letter written to the respondent by Mr. Davis stating that he no longer wanted the respondent to handle legal matters for him.

10. In written communication and in person, Ms. Erickson demanded the return of her original trust document and a refund of $900. The respondent agreed that he owed Ms. Erickson a refund of $900.

11. In early April 2002, the respondent telephoned Ms. Erickson and explained that he would send her the $900 refund when he received an anticipated check from a third party. The respondent did not send the refund.

12. On or about April 19, 2002, Ms. Erickson sent the respondent a certified letter demanding the $900 refund. The respondent's new secretary signed the certified receipt. The respondent received the demand for the refund.

13. On April 20, 2002, the respondent sent a note to Ms. Erickson stating that the large receivable he had expected had not materialized. He enclosed a check in the amount of $500, promising to pay the rest in the near future. The check was written on the respondent's personal account.

14. At a later date, the respondent and Ms. Erickson agreed that the respondent had earned an additional $400 of the $1,000 payment. Therefore, he owed no more refund.

## CLAIM I

[An Attorney Shall Hold Property of Clients or Third Persons Separate from the Attorney's Own Property, with Funds Kept in a Separate Account—Colo. RPC 1.15(a) ]

15. Paragraphs 1 through 14 are incorporated herein by reference.

16. Colo. RPC 1.15(a) provides that, in connection with a representation, an attorney shall hold property of clients or third persons that is in an attorney's possession separate from the attorney's own property.

17. The respondent did not hold Ms. Erickson's $1,000 payment separate from his own property. The funds were not segregated in and available for distribution from the respondent's COLTAF or any other trust account, as he had to delay refund until after he collected other funds. The refund check

was written on the respondent's personal account. Thus, the respondent failed to keep these client funds appropriately identified as client funds separate from his own property, and failed to keep these funds appropriately safeguarded.

18. Through his conduct, the respondent violated Colo. RPC 1.15(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

[A Lawyer Shall Promptly, or Otherwise As Permitted by Law or Agreement, Deliver to the Client or a Third Person Any Funds the Client or Third Person is Entitled to Receive—Colo. RPC 1.15(b) ]

19. Paragraphs 1 through 14 are incorporated herein by reference.

20. Colo. RPC 1.15(b) provides a lawyer shall deliver to a client any funds that the client is entitled to receive.

21. Ms. Erickson was entitled to a refund of a portion of the fees paid, as the respondent had not performed the agreed-to services. Despite agreeing that he owed Ms. Erickson a refund, the respondent failed to provide a prompt refund following Ms. Erickson's request. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

[A Lawyer Shall Not Engage in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation—Colo. RPC 8.4(c) ]

22. Paragraphs 1 through 14 are incorporated herein by reference.

23. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

24. The respondent stated to Ms. Erickson that he had filed the divorce petitions for Ms. Teel and Mr. Davis.

25. At the time the respondent made these statements to Ms. Erickson, he knew they were false since the respondent had not filed divorce petitions on behalf of Ms. Teel and Mr. Davis. The respondent never corrected the false statements.

26. The respondent knew his statements that he had filed divorce petitions on behalf of Ms. Teel and Mr. Davis were not true when he made them, or he was reckless in failing to determine whether the statements were true prior to making them. The respondent's recklessness is demonstrated by the fact that Ms. Erickson inquired about the status of these matters on numerous occasions, yet the respondent continued to state that divorce petitions had been filed when they had not.

27. The respondent's knowingly telling Ms. Erickson that the divorce petitions had been filed, when they had not, constitutes conduct involving misrepresentation, deceit and/or dishonesty.

28. By such conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IV

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

29. Paragraphs 1 through 14 are incorporated herein by reference.

30. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

31. The respondent neither provided services in Ms. Erickson's second divorce case, nor provided services in Ms. Teel's or Mr. Davis's divorce cases. The respondent retained the entire $1,000 paid by Ms. Erickson, despite failing to accomplish those tasks necessary to earn the fees.

32. The client requested a refund of $900 of the funds paid to the respondent and the respondent agreed to such refund. The parties thereafter agreed that the respondent owed a refund of $500. The respondent nevertheless failed to make the refund timely because he had not retained in a trust account the funds which still belonged to the client. Instead, he utilized the funds for personal or other use.

33. The respondent exercised dominion and ownership over the funds which he held in constructive trust for this client.

34. The respondent did not have the consent of the client to use the client funds for his own purposes, or any other purpose other than this client's purpose.

35. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the client.

36. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

37. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### RUDDUCK MATTER

38. Raven Rudduck was the secretary and assistant to the respondent from December 1999 through March, 2002. At the end of the association, the respondent owed Ms. Rudduck for work which she had performed. Ms. Rudduck terminated her relationship with him on or about March 5, 2002.[1]

39. Shortly after the conclusion of Ms. Rudduck's employment, the respondent's wife paid Ms. Rudduck $300. The respondent asked for and received an accounting of the work performed for him and the amount which was still owing. The respondent has not paid Ms. Rudduck $624 owed to her.

---

1. It is unclear whether complainant Rudduck was an employee or independent contractor. For simplicity's sake, she will be referred to as an employee.

40. In an undated letter from the respondent to Ms. Rudduck, apparently written shortly after her departure, the respondent requested that Ms. Rudduck notarize an unsigned signature page, which was dated July 20, 2001. The signature page indicated that Robyn McPeek had appeared before Ms. Rudduck personally and executed the instrument. Ms. Rudduck returned the acknowledgement page to the respondent, without notarizing it.

41. On or about June 14, 2002, the respondent appeared in Federal Court, District of Colorado, in a case entitled *United States v. Channing Nando Wilson.* The respondent informed the court that his secretary (referring to Ms. Rudduck) had given the respondent the wrong date for a prior hearing in the case, which caused the respondent not to appear on the correct date. This statement was untrue, and the respondent knew it was untrue at the time he made it. Ms. Rudduck witnessed this misrepresentation to the court.

42. The respondent has not replied to Ms. Rudduck's request for investigation, nor has he responded to the request from the Office of Attorney Regulation Counsel.

### CLAIM V

**[It Is Professional Misconduct for a Lawyer to Commit a Criminal Act that Reflects Adversely on the Lawyer's Honesty, Trustworthiness, or Fitness as a Lawyer in Other Respects—Colo. RPC 8.4(b) and C.R.C.P. 251.5(b) ]**

43. Paragraphs 38 through 42 are incorporated herein as if fully set forth.

44. Colo. RPC 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. C.R.C.P. 251.5(b) provides an attorney engages in misconduct by committing any act or omission which violates the criminal laws of the State of Colorado.

45. The respondent engaged in criminal conduct by requesting that Ms. Rudduck no-

tarize an unsigned acknowledgement statement. C.R.S. § 12–5–110(4) provides that no notary shall sign a statement as to a notarial act related to attestation by an individual, unless such individual has attested such document or part thereof while in the physical presence of such notary. C.R.S. § 12–5–116 states that knowing and willful violation of the duties of a notary constitutes a class 2 misdemeanor.

46. C.R.S. § 18–2–101(2) specifies that it is criminal attempt to engage in conduct intending to aid another to commit an offense, if complicity under C.R.S. § 18–1–603 can be established. Under that section, complicity includes encouraging another person in planning or committing the offense. The respondent encouraged Ms. Rudduck to notarize the unsigned acknowledgement statement, and thus violated C.R.S. § 18–2–101(2).

47. This criminal act in violation of C.R.S. § 18–2–101(2) reflects adversely on the respondent's fitness as a lawyer.

48. By such conduct, the respondent violated Colo. RPC 8.4(b) and violated C.R.C.P. 251.5(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VI

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation—Colo. RPC 8.4(c) ]**

49. Paragraphs 38 through 42 are incorporated herein as if fully set forth.

50. Colo. RPC 8.4(c) provides that it is professional misconduct for an attorney to engage in conduct which involves dishonesty, fraud, deceit, or misrepresentation.

51. The respondent falsely stated to the court that Ms. Rudduck had misinformed him of the court date, causing him to miss the court-ordered appearance. This statement was untrue, and the respondent knew it was untrue at the time he made it.

52. By his deceitful statement to the court, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VII

### [Engaging in Any Other Conduct That Adversely Reflects on the Fitness to Practice Law—Colo. RPC 8.4(h) ]

53. Paragraphs 38 through 42 are incorporated herein as if fully set forth.

54. Colo. RPC 8.4(h) provides it is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

55. The respondent failed to pay Ms. Rudduck timely despite repeated written and oral requests for payment for the services that respondent requested and received, and failed to respond timely to reasonable requests for information from Ms. Rudduck regarding the status of payment.

56. Thus, the respondent engaged in conduct that adversely reflects on his fitness to practice law in violation of Colo. RPC 8.4(h).

WHEREFORE, the complainant prays at the conclusion hereof.

## NEVILLE MATTER

57. In approximately February 2001, Brenda Neville and Jon Neville decided to divorce. They agreed on the separation of assets and wanted only to formalize their dissolution. Mr. Neville contacted the respondent regarding this dissolution. The respondent had represented Mr. Neville in other legal matters.

58. The respondent agreed to a flat fee of $500 to complete a dissolution proceeding for the Nevilles. Ms. Neville, who lived in California, sent a money order in the amount of $500 payable to the respondent. The respondent received that payment.

59. Ms. Neville reasonably believed that the respondent represented both parties. The respondent did not advise Ms. Neville that he had a conflict of interest in representing both parties. He did not advise Ms. Neville to consult with other counsel.

60. Following Mr. Neville's execution of the petition in the respondent's office, the respondent's assistant, Raven Rudduck, represented to Mr. Neville that the petition would be sent to Ms. Neville for her execution. Mr. Neville relayed this information to Ms. Neville.

61. Ms. Neville telephoned the respondent's office, inquired about the status of the divorce, and stated she had not received the petition. Ms. Neville never received the petition, and the respondent never filed a dissolution petition on the Nevilles' behalf.

62. The respondent never informed Ms. Neville that he was not proceeding on the dissolution matter. He did not earn the fee. He did not refund the unearned fee despite the request by Mr. Neville that the respondent do so.

## CLAIM VIII

### [Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

63. Paragraphs 57 through 62 are incorporated herein as if fully set forth.

64. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

65. The respondent effectively terminated the representation by not going forward with the work which he had agreed to.

66. The respondent failed to give the client notice that he had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest. The respondent failed to return the unearned $500 flat fee.

67. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IX

[A Lawyer Shall Not Represent a Client If the Representation of that Client Will Be Directly Adverse to Another Client Unless the Lawyer Reasonably Believes the Representation Will Not Adversely Affect the Relationship with the Other Client and Each Client Consents After Consultation—Colo. RPC 1.7(a) ]

68. Paragraphs 57 through 62 are incorporated herein as if fully set forth.

69. Colo. RPC 1.7(a) provides that a lawyer shall not represent a client if representation of that client will be directly adverse to another client, unless the lawyer reasonably believes the representation will not be adversely affected and the clients consent after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

70. As attorney for each of the Nevilles in the divorce proceeding, the respondent had a duty of loyalty to each of the clients, individually.

71. In representing both of the clients, the respondent represented clients under circumstances in which the clients were directly adverse.

72. The respondent did not consult with his individual clients as provided for and defined in Colo. RPC 1.7(a)(2).

73. Through his conduct as described above, the respondent engaged in a conflict of interest, in violation of Colo. RPC 1.7(a).

74. The respondent's conflicted representation caused potential harm to his individual clients.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM X

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

75. Paragraphs 57 through 62 are incorporated herein by reference.

76. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

77. The respondent retained the $500 paid by Ms. Neville, despite failing to accomplish those tasks necessary to earn such fees. Mr. Neville requested a refund of the money paid to the respondent. The respondent nevertheless failed to refund the payment.

78. The respondent knew he had not earned the funds as agreed, and knew he was not authorized to keep the payment.

79. The respondent exercised dominion and ownership over funds which he held in constructive trust for the client.

80. The respondent did not have the consent of the client to use the client funds for his own purposes, or any other purpose other than this client's purpose.

81. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the client.

82. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

83. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### JONES MATTER

84. In August 2002, Shirley Jones retained the respondent to file bankruptcy for Ms. Jones. No written fee agreement was provided to Ms. Jones.

85. The respondent agreed to file the bankruptcy case for a $100 retainer and a $200 money order for the court filing fee for her bankruptcy case. Ms. Jones made the money order out to "U.S. Bankruptcy Court," and wrote the respondent a check for $100 for the attorney's fee.

86. Ms. Jones provided the respondent with the information concerning her assets and debt. The respondent informed Ms. Jones that the court would notify Ms. Jones by mail as to when she should appear, at which time the respondent would accompany her. He suggested this would occur sometime in September 2002.

87. Ms. Jones telephoned the respondent several times over the ensuing months regarding the status of her case. During those conversations, the respondent told Ms. Jones that the court was "backed up," but he would "stay on top of the case." By December, the respondent told Ms. Jones that he had been to Denver to the court several times, trying to speed along her case and several others. By his statements, the respondent implied that the bankruptcy petition had been filed, but the bankruptcy court had simply not scheduled the creditors meeting yet.

88. In early January 2003, Ms. Jones attempted to contact the respondent, but could not reach him. Ms. Jones telephoned the bankruptcy court, and a clerk informed Ms. Jones that no bankruptcy case had been filed on her behalf.

89. In late January, Ms. Jones received a notice from the bankruptcy court that the respondent had filed a bankruptcy petition on her behalf on January 24, 2003.

90. Thereafter, the bankruptcy court notified the respondent that the filing was incomplete, as the respondent had not filed the necessary schedules and financial statements. Despite notification from the bankruptcy court, the respondent did not correct the schedules or communicate with Ms. Jones regarding this.

91. A meeting of creditors was scheduled in Ms. Jones's bankruptcy case. Ms. Jones appeared at the meeting, but the respondent did not.

92. Information obtained from the Bankruptcy Court shows that the respondent used Ms. Jones' money order for the filing fee in the Metsuko Parks bankruptcy, filed on or about August 21, 2002.

93. The respondent did not discuss with Ms. Jones that he would use her payment for another client's filing fee. Ms. Jones never gave the respondent permission to use her payment for another client's filing fee.

### CLAIM XI

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

94. Paragraphs 84 through 93 are incorporated by reference.

95. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

96. The respondent utilized the $200 paid by Ms. Jones for another client's filing fee. The respondent did not file a bankruptcy petition for Ms. Jones until January 2003, approximately five months after he used the $200 filing fee paid by Ms. Jones for other purposes.

97. The respondent exercised dominion and ownership over funds which should have been held in trust on behalf of this client.

98. The respondent did not have the consent of the client to use the client funds for his own purposes, or any other purpose other than this client's purpose.

99. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the client.

100. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

101. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## NICKERSON MATTER

102. On August 9, 2002, Janet Nickerson hired the respondent to file a bankruptcy case.

103. The respondent agreed to file a bankruptcy petition and represent Ms. Nickerson for a fee of $300 plus $200 for the filing fee.

104. On August 20, 2002, Ms. Nickerson returned completed paperwork for the bankruptcy and left it, along with a $500 money order, at the respondent's office, as the respondent had requested.

105. Ms. Nickerson attempted many times to contact the respondent during the fall of 2002, but had difficulty reaching anyone. Ms. Nickerson left many messages, but received no response. She finally wrote a letter to the respondent on or about December 12, 2002, inquiring about the lack of communication and the status of her case. Ms. Nickerson left this letter at the respondent's office. The respondent received her letter but did not answer.

106. On or about December 26, 2002, Ms. Nickerson again wrote the respondent and requested that the respondent provide a refund or finish the bankruptcy. The respondent received this letter, but did not reply.

107. The respondent wrote Ms. Nickerson on or about February 3, 2003, and stated he would still file a bankruptcy petition on Ms. Nickerson's behalf if she signed revised forms. Ms. Nickerson signed the forms and returned them to the respondent. The respondent received these documents on or about February 10, 2003.

108. Ms. Nickerson left many messages on Mr. Woodford's telephone during February. In approximately late February or early March, the respondent telephoned Ms. Nickerson and said he had filed the bankruptcy petition and she should receive further information from the bankruptcy court. This statement was untrue.

109. Later in March, Ms. Nickerson telephoned the bankruptcy court and learned that the respondent had not filed a bankruptcy petition on Ms. Nickerson's behalf. Ms. Nickerson left information regarding this on the respondent's voice mail. The respondent called Ms. Nickerson soon thereafter and told her he would check into the problem. Later, the respondent wrote Ms. Nickerson and informed her that the filing fee had been misplaced, and he would resubmit the documents and filing fee.

110. Ms. Nickerson again called the bankruptcy court and learned that the respondent had not filed a bankruptcy petition on her behalf. She then left a message for the respondent demanding that he refund her payments and send her documents to her. The respondent received this demand, but did not answer.

111. The respondent has not communicated with Ms. Nickerson regarding the reason for his delay or why he has not filed the bankruptcy petition.

## CLAIM XII

**[A Lawyer Shall Promptly, or Otherwise As Permitted by Law or Agreement, Deliver to the Client or a Third Person Any Funds the Client or Third Person is Entitled to Receive—Colo. RPC 1.15(b) ]**

112. Paragraphs 102 through 111 are incorporated herein by reference.

113. Colo. RPC 1.15(b) provides a lawyer shall deliver to a client any funds that the client is entitled to receive.

114. Ms. Nickerson was entitled to a refund of the fees paid, as the respondent had not performed the agreed-to services. The respondent has failed to provide a refund following Ms. Nickerson's request. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

 

## CLAIM XIII

**[A Lawyer Shall Not Engage in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation—Colo. RPC 8.4(c) ]**

115. Paragraphs 102 through 111 are incorporated herein by reference.

116. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

117. The respondent told Ms. Nickerson that he had filed the bankruptcy petition on her behalf. This statement was untrue. The respondent knew the statement was not true at the time he made it.

118. The respondent intentionally or knowingly or recklessly falsely told his client that the bankruptcy petition had been filed. This constitutes conduct involving deceit and/or dishonesty.

119. By such conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## MOG MATTER

120. In June 2002, David Mog consulted with the respondent regarding problems with the IRS and establishment of a trust. Mr. Mog believed he had overpaid his taxes and had stopped filing income tax returns. The IRS had demanded that Mr. Mog pay taxes for those years in which he had not filed returns.

121. The respondent agreed to a flat fee of $1,000 to deal with Mr. Mog's IRS problems. For a $3,000 flat fee, the respondent agreed to prepare a trust for Mr. Mog and assist him for a year. Mr. Mog paid the respondent two checks totaling $4,000.

122. The $1,000 check paid by Mr. Mog was dated June 28, 2002. The check was cashed for cash July 1, 2002. At that point, the respondent had not performed any work on the IRS matter.

123. Mr. Mog's $3,000 check for the trust work was dated July 10, 2002. That check was cashed for cash by the respondent on July 10, 2002. There is no evidence that the respondent did any work on a trust for Mr. Mog. There is no evidence that he deposited the check in a trust or other account.

124. Over the following weeks, Mr. Mog telephoned the respondent's office, but was unable to reach the respondent. The phone was either busy or out of service. Mr. Mog was unable to leave a message. Mr. Mog telephoned the respondent on the emergency numbers given to Mr. Mog at their meeting. Although Mr. Mog left messages at those numbers, the respondent never answered.

125. Mr. Mog eventually went to the respondent's office, where he encountered the respondent's wife. She said the respondent was on vacation. Mr. Mog gave her the latest demand letter from the IRS, and she said she would give it to the respondent. The respondent did not contact the Mr. Mog after that, and the Mr. Mog has been unable to reach the respondent.

126. Mr. Mog's certified letter to the respondent requesting a refund was returned marked "unclaimed." Mr. Mog has sent another request by regular mail for an accounting, refund, and return of Mr. Mog's files. The respondent has not answered.

127. Mr. Mog has continued to receive demand letters from the IRS. The letters show no evidence that the respondent contacted the IRS on Mr. Mog's behalf.

128. The respondent did no work on the IRS matter or the trust but never informed Mr. Mog that the respondent was not proceeding on these matters. He did not refund the unearned fee or return Mr. Mog's files.

## CLAIM XIV

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

129. Paragraphs 120 through 128 are incorporated herein as if fully set forth.

130. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such

as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

131. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

132. The respondent failed to give the client notice that he had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

133. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XV

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation—Colo. RPC 8.4(c) ]**

134. Paragraphs 120 through 128 are incorporated by reference.

135. Colo. RPC 8.4(c) states that an attorney shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

136. At the time the respondent cashed the payments from Mr. Mog, the respondent had provided no services in relation to the IRS matter or preparation of a trust. The respondent retained the $4,000 paid by Mr. Mog, despite failing to accomplish those tasks necessary to earn the fees.

137. The client requested a refund of the funds paid to the respondent, but the respondent failed to refund the payment.

138. The respondent failed to provide any services entitling him to any of the $4000. The entire $4,000 was unearned.

139. The respondent has exercised dominion and ownership over the funds which he held in constructive trust for this client.

140. The respondent did not have the consent of the client to use the client funds for the respondent's own purposes, or any other purpose other than his client's purpose.

141. Through the unauthorized exercise of dominion or ownership over client funds as described above, respondent knowingly converted or misappropriated funds belonging to the client.

142. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation.

143. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### ENGLISH MATTER

144. Julie English and her then-husband met with the respondent in the summer of 2002 regarding bankruptcy filing. The couple planned to file for divorce, and they wished to have the bankruptcy filed first so that they could more clearly define each person's obligations and would only have to file one bankruptcy. They told this to the respondent, and he agreed that he would file the bankruptcy petition immediately. However, he warned the couple that the bankruptcy courts were "backed up," and there might be a few weeks' delay.

145. On approximately September 1, 2002, Ms. English and her husband delivered the signed paperwork to the respondent and paid his fee of $300, plus $200 for the bankruptcy court's filing fee. The respondent agreed he would file the petition and schedules and appear at the creditors meeting in exchange for this flat fee. There was no written fee agreement.

146. Ms. English telephoned the respondent many times between September and November 18, but he did not return her calls. On two occasions the respondent answered the phone, at which time he told her that

they should be hearing from the bankruptcy court soon.

147. The respondent did not file the bankruptcy petition until November 18, 2002. Because of the respondent's delay in filing the petition, Ms. English and her then-husband filed their divorce case prior to the filing of the bankruptcy.

148. The creditors meeting was scheduled for January 9, 2003. The respondent received notice of the creditors meeting. The couple arrived at the designated meeting room on time, but the respondent did not show. The trustee suggested that Ms. English try to reach the respondent so they could go forward with the creditors meeting. Ms. English telephoned the respondent's work number, but it was disconnected. Ms. English telephoned an alternate number that the respondent had given her, but she was unable to leave a message because the mailbox was full.

149. After watching the trustee question other bankruptcy debtors, the couple determined to go forward with the creditors meeting. No creditors appeared regarding Ms. English's bankruptcy, and it appears the discharge will enter in due course. However, the respondent's failure to appear at the creditors meeting was very disturbing to Ms. English.

150. A few days later, Ms. English tried the respondent's alternate phone number again, and the mailbox was not full. She left a message that she wanted the respondent to telephone her. The respondent did not call her.

151. When no response was received, Ms. English again attempted to telephone the respondent. At that time, the alternate number was disconnected.

152. Ms. English has sent letters to the respondent, but they have been returned. She has not heard anything from the respondent since her telephone calls prior to the filing of the bankruptcy petition. Ms. English's ex-husband went to the respondent's office and found that it was empty. He

spoke with the landlord, who stated that the respondent had moved out without notice.

### CLAIM XVI

**[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]**

153. Paragraphs 144 through 152 are incorporated herein by reference.

154. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

155. The respondent failed to act with reasonable diligence and neglected client legal matters by failing to file the English's bankruptcy in a timely manner and failing to appear at the creditors meeting.

156. The respondent knew or should have known that his lack of diligence or promptness and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness and/or neglect. Ms. English telephoned the respondent's office many times and left messages between September and November, 2002, but the respondent failed to file the bankruptcy petition timely.

157. The respondent was notified of the creditors meeting, but he failed to appear. Despite knowledge of Ms. English's telephone calls and notice of the creditors meeting, the respondent failed to file the bankruptcy petition timely, and failed to appear at the creditors meeting.

158. The respondent's lack of diligence and promptness and/or neglect caused potentially serious injury to the client.

159. The respondent's failure to act with reasonable diligence and promptness and/or neglect violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XVII

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

160. Paragraphs 144 through 152 are incorporated herein as if fully set forth.

161. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

162. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take appropriate action on behalf of the client. The respondent failed to complete the representation by failing to appear at the creditors meeting.

163. The respondent failed to give the clients notice that he had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest in relation to the creditors meeting. The respondent failed to return any portion of the fee despite his failure to attend the creditors meeting.

164. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; that the respondent be appropriately disciplined for such misconduct; that the respondent be required to refund fees to the clients, and/or the Client Protection Fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution to third parties; that the respondent be required to return client files (or other client property); that the respondent be required to take any other remedial action appropriate under the circumstances; and that the respondent be assessed the costs of this proceeding.

DATED this ____ day of May, 2003.

Debora D. Jones, # 16917
Assistant Regulation Counsel
John S. Gleason, # 15011
Regulation Counsel
Attorneys for Complainant